1

2

3

4

5

6

7

8

9

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 1 5 2014

CENTRAL DISTRICT OF CALIFORNIA
BY ____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10  GENOVEVA TORRES,

11              Plaintiff,

12       v.

13  CAROLYN W. COLVIN, ACTING
    COMMISSIONER OF THE SOCIAL
14  SECURITY ADMINISTRATION,

15              Defendant.[1/]

16

Case No. SACV 13-01195 AN

MEMORANDUM AND ORDER

17       Pursuant to the Court's Case Management Order, the parties have filed the

18  Administrative Record ("AR") and a Joint Stipulation ("JS") raising four disputed issues.

19  The parties have consented to proceed before the Magistrate Judge. The Court has

20  carefully reviewed the parties' respective contentions in conjunction with the AR. This

21  matter is now ready for decision.

22                              **Issue #1**

23       Plaintiff asserts that the Administrative Law Judge ("ALJ") improperly rejected

24  her subjective symptom testimony without providing adequate reasons for doing so. (JS

25  3-4, 8-10.) Plaintiff alleges she is unable to work due to pain in her shoulders, knees,

26  wrists, and low back, weakness, fatigue, dizziness, and difficulty sitting, standing,

27

28  _____

    [1/]    The Acting Commissioner is substituted as the defendant pursuant to Rule 25(d)
    of the Federal Rules of Civil Procedure. No further action is needed to continue this case
    by reason of the last sentence of 42 U.S.C. § 405(g).

1  walking, and using her hands. (AR 22, 52-53.) Plaintiff testified that she is limited to
2  lifting and carrying 10 to 15 pounds, standing and walking 3 to 4 hours before needing
3  to change positions, and using her hands for 3 hours before needing to take a 10 to 15
4  minute break. (AR 55-56.) Plaintiff reported that she is unable to perform any
5  housework. (AR 23, 160.)

6      The ALJ determined that Plaintiff's sole severe impairment was mild degenerative
7  joint disease of the knees. (AR 21.) The ALJ found that Plaintiff's subjective complaints
8  concerning the intensity, persistence and limiting effects of her reported pain and other
9  symptoms were not credible to the extent they were inconsistent with her residual
10  functional capacity ("RFC") for light work. (AR 22-25.) The ALJ discounted Plaintiff's
11  subjective symptom testimony because it was unsupported by the objective medical
12  evidence. (AR 23.) In particular, the ALJ noted that x-rays of Plaintiff's knees from
13  October 2011, showed only mild degenerative changes with no arthritic changes. (AR
14  23, 311, 318.) The ALJ also relied on the testimony of the medical expert, Steven Gerber,
15  M.D., who opined that Plaintiff is capable of performing light work (i.e., standing and
16  walking 6 hours in an 8-hour day with normal breaks, sitting 6 hours in an 8-hour
17  workday with normal breaks, and lifting and carrying 10 pounds frequently and 20
18  pounds occasionally). (AR 54.) The ALJ concluded that Plaintiff's limited daily activity
19  was a "lifestyle choice and not due to any established impairment," given the "relatively
20  benign medical evidence." (AR 23.)

21      Although a lack of corroborating objective medical evidence may negatively
22  impact a claimant's credibility determination, Plaintiff now offers new MRI evidence
23  relevant to her shoulder and knee impairments. (AR 326-33.) As discussed in Issue #4
24  below, remand is appropriate for consideration of the new evidence, as this evidence may
25  indicate Plaintiff's shoulder and knee impairments are more severe than determined by
26  the ALJ. Thus, the ALJ's finding that Plaintiff's subjective symptom testimony
27  conflicted with the objective medical evidence is not supported by substantial evidence.
28      The other reason cited by the ALJ, Plaintiff's routine and conservative treatment

1  for her knee pain, also fails to justify rejection of Plaintiff's credibility. (AR 23.) The

2  record shows that Plaintiff's doctors prescribed medication to treat Plaintiff's medical

3  condition. (AR 23, 179, 193, 321-22.) There is no evidence, however, that surgery or

4  more intensive treatment was recommended, or that Plaintiff failed to follow a prescribed

5  course of treatment. *Cf. Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("if a claimant

6  complains about disabling pain but fails to seek treatment, or fails to follow prescribed

7  treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint

8  unjustified or exaggerated."). Moreover, Plaintiff claims that her financial circumstances

9  limited her access to medical care. (JS 4, 9; AR 76); *see Regennitter v. Comm'r Soc. Sec.

10  Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("we have proscribed the rejection of a

11  claimant's complaints for lack of treatment when the record establishes that the claimant

12  could not afford it"). Thus, Plaintiff's relatively conservative treatment history was not

13  a proper basis for finding Plaintiff not credible.

14       Accordingly, Plaintiff is entitled to remand on Issue #1.

15                                    **Issue #2**

16       Plaintiff contends that the ALJ erred by failing to find her hand impairments to be

17  severe at step 2 of the sequential evaluation. (JS 10-12, 15-17.) Plaintiff notes that x-rays

18  of her hands from October 2011, show demineralization involving the proximal

19  interphalangeal joints and the metacarpophalangeal joints, with no bony erosions. (AR

20  311, 318.) The x-ray report also recommended further evaluation of Plaintiff's hands

21  with an arthritis panel. (AR 311, 318.) Plaintiff contends that the ALJ erred by failing

22  to discuss her hand x-rays in the decision. (JS 11, 16.)

23       The ALJ did not need to discuss all evidence presented, rather, the ALJ only

24  needed to explain why significant, probative evidence was rejected. *See Vincent on

25  Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).[2] While the x-ray

26  of Plaintiff's hands showed demineralization, the medical record failed to establish

27

28  [2]  The Court notes that Plaintiff's contention that the ALJ ignored Plaintiff's hand x-rays is not supported by the record. (AR 24-25.)

1  limitations related to the condition. The burden was on Plaintiff to show that her hand
2  impairments were severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).
3  Moreover, Plaintiff's testimony suggested that her hand impairments had minimal impact
4  on her ability to perform basic work activities. *See* 20 C.F.R. § 404.1521(a) (an
5  impairment is "not severe" if it does not "significantly limit" the ability to conduct basic
6  work activities). At her administrative hearing, Plaintiff testified that she was able to use
7  her hands for 3 hours at a time before needing to take a 15-minute break. (AR 56.) It was
8  reasonable for the ALJ to infer that any limitation in Plaintiff's ability to use her hands
9  could be accommodated by an ordinary break schedule (i.e., morning break, lunch
10 period, and afternoon break). (AR 57); *see, e.g.,* Soc. Sec. Admin., Program Operations
11 Manual System ("POMS"), General Guidelines for Residual Functional Capacity
12 ("RFC") Assessment, § DI 24510.005(C)(2) ("Consider an 8-hour workday and a 5 day
13 work week (with normal breaks, e.g., lunch, morning and afternoon breaks." (emphasis
14 omitted)). Further, the ALJ's consideration of Plaintiff's hand impairments was
15 consistent with the opinion of the medical consultant, Dr. Gerber. (AR 23-24, 53-54.) Dr.
16 Gerber reviewed all of Plaintiff's medical exhibits contained in the record, and
17 concluded that Plaintiff did not have a severe hand impairment. (AR 53-54); *see Andrews*
18 *v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (findings of a nontreating, nonexamining
19 physician can amount to substantial evidence, so long as other evidence in the record
20 supports those findings).

21       Plaintiff also contends that a medical report from January 2009 supports her claim
22 that her hand impairments are severe. (JS 10; AR 233.) That report noted Plaintiff had
23 mild edema in her left thumb and that her index finger bounced back when flexed. (AR
24 233.) The report also indicated that Plaintiff was able to make a fist, had a negative
25 Phalen's test, and normal motor strength. (AR 233.) As the report predates Plaintiff's
26 alleged onset date by more than two years and does not indicate that Plaintiff's hand
27 conditions affected her ability to conduct basic work activities, it does not establish that
28 the ALJ erred in failing to find Plaintiff's hand impairments severe. (JS 10; AR 19, 48,

233); *see* 20 C.F.R. § 404.1521(a); *see also Bowen*, 482 U.S. at 146 (if a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity").

Finally, Plaintiff argues that the opinion of one of her doctors, Dr. Tran, established that she has osteoarthritis in her hands. (JS 10; AR 313.) However, as discussed in Issue #3 below, the ALJ properly rejected Dr. Tran's assessment of Plaintiff's hand limitations, as conclusory and unsupported by any objective, clinical findings. (AR 24-25.)

Accordingly, Plaintiff is not entitled to a reversal or remand based upon Issue #2.

**Issue #3**

Plaintiff contends the ALJ failed to give proper consideration to the opinion of Dr. Tran. (JS 18, 21; AR 313.) In March 2012, Dr. Tran completed a one-page form, "Medical Assessment Of Ability To Do Work-Related Activities," in which he checked and circled choices on the form to indicate Plaintiff's level of incapacity. (AR 313.) Dr. Tran indicated that Plaintiff was limited to lifting/carrying 10 pounds, sitting 1 hour at a time for a total of 2 hours in an 8-hour workday, and standing and walking 30 minutes at a time, for a total of 3 hours in an 8-hour workday. (AR 315.) When asked for the medical findings to support the limitations in sitting, standing, walking, lifting, and carrying, Dr. Tran failed to cite any medical evidence or give any written response. (AR 313.) With respect to Plaintiff's hands and upper extremities, Dr. Tran found that Plaintiff could occasionally engage in simple grasping, fine manipulation and reaching with both hands. (AR 313.) In support of this assessment, Dr. Tran wrote, "X-ray revealed osteoarthritis." (AR 313.) Dr. Tran failed to offer any further explanation for his opinion. (AR 313.)

The ALJ recognized Dr. Tran as a treating provider, but rejected his opinion as unsupported by any objective, clinical findings and inconsistent with the medical record as a whole. (AR 24-25.) The one-page form shows that Dr. Tran did not cite any

1   evidence to support the assessed limitations in sitting, standing, walking, lifting, and
2   carrying. (AR 313.) While Dr. Tran referred to an x-ray report to support the assessed
3   limitations in Plaintiff's use of her hands and a diagnosis of osteoarthritis, the only x-ray
4   report of Plaintiff's hands contained in the record is the report from October 2011. (AR
5   318.) That report, however, does not indicate a diagnosis of osteoarthritis. Rather, the
6   report discusses demineralization in Plaintiff's hand joints, and recommends an arthritis
7   panel for further evaluation of those findings. (AR 24-25, 318.)

8          Based on the record at the time the ALJ issued her decision, the ALJ properly gave
9   little weight to Dr. Tran's opinion because it was unsupported by objective medical
10  evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an
11  ALJ need not accept a physician's opinion that is brief, conclusory and inadequately
12  supported by clinical findings); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,
13  1195 (9th Cir. 2004) (holding that the ALJ did not err in giving "minimal evidentiary
14  weight" to controverted treating source opinions that were "in the form of a checklist,"
15  and lacked supportive objective medical findings). However, as discussed in Issue #4,
16  the ALJ did not have the opportunity to consider new MRI evidence relating to
17  Plaintiff's reported shoulder and knee impairments. (AR 326-33.) As the new MRI
18  evidence reveals objective findings not previously included in the record, it may alter the
19  ALJ's consideration of Dr. Tran's RFC assessment. Thus, considering the record as a
20  whole, the ALJ's rejection of Dr. Tran's opinion is not supported by substantial evidence
21  regarding Plaintiff's shoulder and knee impairments. *See Brewes v. Comm'r of Soc. Sec.
22  Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

23          Accordingly, Plaintiff is entitled to remand on Issue #3.
24                                       **Issue #4**
25          Plaintiff contends that remand is warranted for consideration of new and material
26  evidence submitted to the Appeals Council. (JS 22-23, 26-28.) The new evidence
27  consisted of MRI reports of Plaintiff's shoulders and knees taken on September 5, 2012,
28  more than two months after the ALJ issued the decision finding Plaintiff not disabled.

Page 6

1  (AR 5-6, 19-26, 198-99, 326-33.) Plaintiff contends the MRIs establish longstanding,
2  chronic conditions that existed since her alleged onset of disability. (JS 22, 26.)

3       The new MRI evidence reveals conditions in Plaintiff's shoulders and knees not
4  previously documented in the medical record. The MRI of the left knee showed a
5  subchondral defect, moderate effusion, and a horizontal tear of the posterior horn of the
6  medial meniscus, and the MRI of the right knee showed an oblique tear of the posterior
7  horn of the medial meniscus. (AR 326-28.) The MRI of the left shoulder revealed
8  impingement and a tear of the supraspinatus tendon, and the MRI of the right shoulder
9  revealed impingement of the supraspinatus tendon and tears of the subacromial-
10 subdeltoid bursa and the superior glenoid labrum. (AR 330, 332.) Plaintiff asserts that
11 the MRI reports reflect greater abnormalities and degrees of limitations in Plaintiff's
12 shoulders and knees than found by the ALJ. (JS 22, 26.)

13      "[W]hen the Appeals Council considers new evidence in deciding whether to
14 review a decision of the ALJ, that evidence becomes a part of the administrative record,
15 which the district court must consider when reviewing the Commissioner's final decision
16 for substantial evidence." *Brewes*, 682 F.3d at 1163. Here, the new MRI evidence was
17 submitted to, and considered by the Appeals Council, but the Appeals Council
18 determined that the evidence did not provide a basis for changing the ALJ's decision.
19 (AR 1-2, 5-6, 19-26, 198-99, 326-33.) As the new MRI evidence was made part of the
20 administrative record, the Court will consider the new evidence in "determin[ing]
21 whether, in light of the record as a whole, the ALJ's decision was supported by
22 substantial evidence." *Brewes*, 682 F.3d at 1163.[3]

23      The Commissioner argues that the new MRI evidence relates to the period after
24 the ALJ's decision of June 27, 2012, and does not change the fact that substantial

25
___
26 [3]  In addition to the new MRI evidence, Plaintiff submitted records dated March 14,
2013, from Imaging Centers of Anaheim and medical records dated May 18, 2013, from
27 West Coast Radiology Centers. (AR 2.) The Appeals Council concluded that these
records pertained to the period post-dating the ALJ's decision of June 27, 2012. (AR 2.)
28 These additional medical records were not made part of the administrative record and are
not the subject of Plaintiff's claim in Issue #4. (AR 5.)

1  evidence supports the ALJ's decision. (JS 24-25); *see Brewes*, 682 F.3d at 1162 ("The
2  Commissioner's regulations permit claimants to submit new and material evidence to the
3  Appeals Council and require the Council to consider that evidence in determining
4  whether to review the ALJ's decision, so long as the evidence relates to the period on or
5  before the ALJ's decision.") (citing 20 C.F.R. § 404.970(b)). The Commissioner
6  emphasizes that x-rays of Plaintiff's knees and shoulders from October 2011, revealed
7  minimal findings. (JS 25; AR 318.) Specifically, x-rays of Plaintiff shoulders were
8  unremarkable and showed "no arthritic changes," and x-rays of Plaintiff's knees showed
9  only "very mild degenerative changes" and "early changes," with no joint effusions or
10  other abnormalities. (AR 318.) The Commissioner asserts that the MRI evidence reflects
11  "new conditions and deterioration in Plaintiff's condition after the ALJ issued her June
12  2012 decision." (JS 25.) The Court disagrees, and finds that this case must be remanded
13  for reconsideration of Plaintiff's shoulder and knee impairments in light of the new
14  evidence.

15      Although the MRIs of Plaintiff's shoulders and knees were conducted more than
16  two months after the ALJ's decision issued, they are not necessarily unrelated to
17  Plaintiff's condition prior to the date of the decision. (AR 326-33); *see, e.g., Martinez*
18  *v. Astrue*, 2014 WL 310387, at * 19 (N.D. Cal. Jan. 28, 2014) (finding x-rays and MRIs
19  taken after the ALJ rendered his decision related to the period before the ALJ's decision
20  where they permitted a comparison of changes in the plaintiff's spine); *Olivares v.*
21  *Astrue*, CV 10-07976, 2011 WL 2882212, at *4 (C.D. Cal. July 19, 2011) (finding an
22  MRI conducted several months after the ALJ's decision to be material where it related
23  to back problems the claimant had raised before the ALJ and the plaintiff had become
24  eligible for disability benefits around the time the MRI was performed). Plaintiff testified
25  that she was unable to work, in part, due to significant knee pain and shoulder pain. (AR
26  22, 52.) While it is possible that there may have been changes to Plaintiff's knees and
27  shoulders, there is no indication in the record that Plaintiff experienced any injury that
28  would have caused a significant worsening of her conditions during the interim period

1  between the ALJ's decision and the MRIs. Moreover, as the Appeals Council accepted
2  the new evidence and made it part of the record, it apparently concluded that the new
3  evidence pertained to the period at issue in this case. *Cf. supra* note 3.

4       There is also a reasonable possibility that Plaintiff's MRIs could have changed the
5  outcome of the ALJ's determination. The ALJ based the decision largely upon the lack
6  of objective medical evidence supporting Plaintiff's "allegations regarding the severity
7  of her symptoms and limitations." (AR 23.) Likewise, the ALJ rejected Dr. Tran's
8  opinion as inconsistent with the record as a whole, while finding Dr. Gerber's opinion
9  "highly credible" because it was "well-supported by the objective medical evidence."
10  (AR 24-25.) The objective findings in the MRIs, however, identify physical conditions
11  that could provide a basis for Plaintiff's claim of disability, as they show that Plaintiff's
12  shoulder and knee impairments may be more severe and functionally limiting than
13  initially determined by the ALJ. The new evidence may also provide corroboration for
14  Plaintiff's subjective complaints of pain and Dr. Tran's RFC assessment, with respect
15  to Plaintiff's shoulder and knee impairments. Thus, taking into account the new MRI
16  evidence, the ALJ's decision is not supported by substantial evidence. *Brewes*, 682 F.3d
17  at 1163.

18       Accordingly, remand is warranted on the basis of Issue #4.

19
20                    **ORDER**

21       The decision whether to remand for further proceedings or order an immediate
22  award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d
23  1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further
24  administrative proceedings, or where the record has been fully developed, it is
25  appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at
26  1179 ("the decision of whether to remand for further proceedings turns upon the likely
27  utility of such proceedings"). But when there are outstanding issues that must be
28  resolved before a determination of disability can be made, and it is not clear from the

1 | record the ALJ would be required to find the claimant disabled if all the evidence were

2 | properly evaluated, remand is appropriate. *Id.*

3 |     The Court finds a remand is appropriate because there are unresolved issues that,

4 | when properly resolved, may ultimately still lead to a not disabled finding. *See INS v.*

5 | *Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of administrative

6 | determination, "the proper course, except in rare circumstances, is to remand to the

7 | agency for additional investigation or explanation") (internal quotation marks and

8 | citation omitted). Accordingly, the present case is remanded for further proceedings

9 | consistent with this Memorandum and Order.

10 |     IT IS THEREFORE ORDERED that a judgment be entered reversing the

11 | Commissioner's final decision and remanding the case so the ALJ may make further

12 | findings consistent with this Memorandum and Order.

15 | DATED: April 15, 2014

                      ARTHUR NAKAZATO,
           UNITED STATES MAGISTRATE JUDGE